STORY ET AL., PLAINTIFFS AND RESPONDENTS, v. WOOLVERTON ET AL., DEFENDANTS AND RESPONDENTS; ANGIE REYNOLDS, INTERVENER AND RESPONDENT; THE STATE OF MONTANA, INTERVENER AND APPELLANT.

(No. 1,995.)

(Submitted September 26, 1904. Decided December 1, 1904.)

*Public Lands—Grant by U. S. Government to State—Construction of Grant—Right to the Use of Water.*

1. A grant of public land must be construed in favor of the grantor.

2.   The Act of Congress of February 13, 1891 (26 Statutes at Large, 748),
     granting to the state of Montana one section of land of an abandoned mili-
     tary reservation to be selected "so as to embrace the buildings and improve-
     ments thereon, to be used by the said state as a permanent militia camp
     ground," did not grant any right to the use of water which the government
     had diverted from a stream and used upon the land granted for domestic
     and irrigation purposes necessary to a military encampment.

*Appeal from District Court, Gallatin County; W. R. C. Stewart, Judge.*

ACTION by T. B. Story and others against W. W. Woolverton and others, and Angie Reynolds and the state intervened. From a judgment against the state as intervener, it appeals. Affirmed.

*Mr. James Donovan, Attorney General,* for the State.

The position of the appellant and intervener is that on February 5, 1868, the president of the United States had the right, and did, set aside certain lands for the purpose of the Fort Ellis military reservation; that as soon as the lands so set aside were occupied by the military forces, the military forces began the construction of buildings, and the use of water for the conveniences of the post; that from the particular stream from which it took its water, Bear Creek, the government of the United States had yielded no prior claim or right to any of these waters; that the waters were necessary for military, domestic and agricultural purposes at the fort, and were so used by the government up to the time the land was conveyed to the state of Montana; that the paramount idea in the Act of 1891, February 13, was to grant to the state of Montana a portion of said military reservation for the purpose of a camp ground for the state militia; that the land was so conveyed for that particular use, and the particular piece of land that was conveyed was the land upon which the buildings were situated, so that the state might have a permanent place for a state militia camp ground; in this grant it conveyed everything that was essential to carry out the purposes of the grant; the water was necessary and essential to perfect the purposes of the grant, and while the law

does not expressly provide the conveyance of water, yet the grant itself carries with the land and buildings the water, just as much as it carries anything connected with the camp ground, and the grant carried with it sufficient water to put the ground in such shape that the intent and purpose of the grant should be fulfilled to the highest degree. It would be rather novel to say that the federal government made a grant of land to the state of Montana for the purposes of a military camp ground, and in such a grant by its silence in reference to the water, excluded the water, which exclusion would amount to putting the grant in such condition as to defeat the intent and purposes of the grant. Such cannot be a fair construction of this grant. (*Smith* v. *Denniff,* 24 Mont. 20; *Cave* v. *Crafts,* 53 Cal. 140;' *Philbrick* v. *Ewing,* 97 Mass. 134; Black's Pomeroy on Water Rights, p. 98.)

It is never contemplated in any federal, state or individual endowment, or gift, or conveyance, to make an endowment, grant, gift or conveyance, and then defeat the gift, grant, endowment or conveyance by withholding essentials and inseparable incidents or appurtenances of the gift, donation, conveyance or grant, which by such withholding would make the gift, conveyance, grant or endowment worthless or invaluable. If the question resolves itself into whether or not certain things are intended in a grant to go with a grant, the inquiry always is, where the act does not express and directly mention all the essentials, that the essentials go with it; otherwise the grant would be invaluable. It is only when there is an express exclusion of a beneficial appurtenance or incident in the grant that it can be said that the incident or appurtenance is excluded from the grant. It would be a strange construction of the Act of Congress of February 13, 1891, to say that the federal government conveyed to the state of Montana 640 acres of ground for a military camp ground, or to be used for other public purposes, but that it excluded from the grant the use of any water that was previously used upon the ground, or that it did not convey the water by such grant but returned the water to the

public so that it could be appropriated as against the state and the usefulness of the grant destroyed.

The correct construction of said grant to the state of Montana is this: The federal government conveyed to the state of Montana 640 acres of ground to be selected by the agent of the state, and the use of everything was conveyed that was made use of by the federal government while it occupied the land that was granted, so long as the things that the government used were essential to the uses and purposes of the grant. This interpretation is reinforced by the language of the act itself, because in making the grant the federal government did not convey the land to the state of Montana because of the value of the land from a monetary point of view, or to add to the wealth of the land grants of the state, or to increase the treasury of the state of Montana, but for the express and limited purpose of a camp ground and for public purposes, reserving the right in congress to cancel the grant at any time when the purposes for which the grant was made were not being carried out. The purposes for which the grant was made cannot be carried out if the grant did not convey the water with the land. Suppose this was done, could it be then said that if the federal government forfeited the grant and desired to use the granted lands for federal military post again that the water that was essential to the maintenance of a military post upon this one section was lost to the federal government, and that it could not assert a right to the water?

The state of Montana having accepted the terms of the grant, became vested with the title conveyed by said grant, and the state of Montana, having taken immediate possession, made its selection and occupied and used said grant as the terms of the grant directed, is entitled to the exclusive and peaceable possession of the land and sufficient water from Bear creek to make useful the land as the federal government intended it should be used. The federal government, being the owner of the water and the land, used the same from 1868 down to February 13, 1891, and had an uninterrupted use of the water until all that portion of the military reservation other than section 15 and

forty acres in section 10 was thrown open to settlement and surveyed. The state of Montana took possession February 13, 1891, or immediately thereafter, and has, up to the present time, continued to occupy section 15 and forty acres in section 10, which it selected under the grant and has used the land for the purposes mentioned in the grant and the water to carry out the purposes of the grant. For thirty-six years the waters of Bear creek have been used by the federal and state governments for public purposes as a branch of the federal and state governments. There has been no period of time since February 15, 1868, to the present time when the federal government relinquished any portion of the water that was essential for military purposes at Fort Ellis, and there is no period of time from February 13, 1891, to the present when the state has failed to use the water for the purposes of the grant. There has been an unbroken and uninterrupted possession in the federal and state governments to the waters of Bear creek for thirty-six years, against which no claim could be asserted by any private individual.

The essential elements of a right of "appropriation" are a prior, continued and beneficial use of water. It is rights to the use of water which by "priority of possession" have become vested under local customs and laws that are acknowledged and confirmed by the act of 1866. That act does not waive any right of the government to exercise the privileges of using the water of any stream which it may subject to a beneficial use. So long as the water of a stream is used by the government, or its successor in interest, no "priority of possession" thereof could be obtained by an individual, and, consequently, no right could be initiated so as to be entitled to recognition under said act.

To be entitled to initiate a right of appropriation it is necessary only that the appropriator be in the possession of riparian land or of land to which he has a right of way for the necessary ditch from the stream. (*Smith* v. *Denniff,* 24 Mont. 20.)

There is no express restriction of the privilege of appropriation to individuals to the exclusion of the government or any other body politic; and it is insisted that, from the nature of the

right, none could fairly be implied.   (*Krall* v. *United States,* 24 C. C. A. 543, 79 Fed. 241, 48 U. S. App. 351.)

In the case of *Smith* v. *Denniff, supra,* this court, in an opinion by Mr. Justice Pigott, after making an exhaustive examination of the subject, concludes that where an owner of land acquires by appropriation or purchase a water right and uses the same on his land, the title to the water right, which he shows is appurtenant to the land, passes under a grant of the land unless expressly reserved in the deed.

The complaint in intervention of the state of Montana alleges the continuous use by the government on the Fort Ellis reservation of the water appropriated by it in 1870 up to the time of the grant to the state of Montana.   The right to its use was, therefore, appurtenant to the land, and, not being reserved from the grant, passed by it to the state of Montana.

So long as the state of Montana remains in the possession of the Fort Ellis reservation under its grant, it therefore will be in the position to enjoy all the rights of a tenant *in fee simple.* The effect of the qualifications attached to the grant, that said reservation shall be used as a militia camp ground or for such other uses as may be prescribed by the legislature, is that if such uses shall at any time cease, the government will be in a position to assert its reversionary right.   Manifestly, however, these qualifications do no more than define what shall entitle the United States to assert its right of reversion, and do not constitute, so far as third persons are concerned, any limitation or restriction upon the use which may be made by the state of the Fort Ellis reservation.   So far as the respondents in this case are concerned, it is immaterial what use the state is making of this land, so long as the United States does not interfere. (*Bybee* v. *Oregon & Cal. R. R. Co.,* 139 U. S. 675; *Schulenberg* v. *Harriman,* 21 Wall. 44; *Van Wyck* v. *Kneavals,* 106 U. S. 360.)

*Mr. John A. Luce,* for Respondents Story et al.

*Messrs. Hartman & Hartman,* for Respondents Woolverton, Reynolds et al.

MR. COMMISSIONER CALLAWAY prepared the following opinion for the court:

The plaintiffs and defendants were trying their respective titles to the waters of Bear creek, in Gallatin county, when the state of Montana, through the attorney general, intervened. Upon the trial, plaintiffs and defendants objected to the introduction of any evidence in support of the intervener's complaint, on several grounds. The court sustained the objection, and entered judgment against the intervener, from which it has appealed.

It appears from the record that by an executive order of the president of the United States there was created on February 15, 1868, the military reservation of Fort Ellis, situated in Gallatin county, state of Montana; that said military reservation was created for the purpose of stationing soldiers of the United States government there; that it consisted of a large number of acres of land, and that a plat thereof was made, and its boundaries clearly defined; that the United States continued to use and occupy the same until July 26, 1886, when it was abandoned; that it became necessary to supply the reservation with water for domestic and irrigation purposes, and that the government, through its officer in charge, constructed a ditch sufficient to carry something over 200 inches of water from Bear Creek canyon to section 15, where the buildings on said reservation were situated, and where the intervener alleges the water was used for domestic purposes, and for the purpose of irrigating plats for gardens, and the raising of hay and other crops. The intervener further alleges that the government of the United States continued to use said water, and had its ditches and flumes in such condition that they would carry more than 200 inches of water onto said section 15, and continued to use said water from the time of its diversion up to the time the military reservation was abandoned in 1886. The record does not show that the water was not used on other portions of the reservation besides upon section 15.

On February 13, 1891, congress passed an Act to provide for the disposal of the abandoned Fort Ellis military reservation, in Montana, under the homestead law, and for other purposes. (26 Stat. 747.) The first section of the Act authorized the secretary of the interior to cause the land embraced in the reservation to be surveyed. The second section reads as follows: "That there is hereby granted to the state of Montana one section of said reservation to be selected according to legal subdivisions so as to embrace the buildings and improvements thereon, to be used by the said state as a permanent militia camp ground, or for other public purpose in the discretion of the state legislature; provided that whenever the state shall cease to use said lands for public purposes the same shall revert to the United States." Pursuant to this provision the state of Montana selected the ground upon which the buildings were situated, which included all of section 15, except 40 acres, and in lieu of this 40 selected 40 in the adjoining section 10.

It is contended by the attorney general that congress granted to the state the ditch from Bear creek, together with the right to use 200 inches of the waters of said creek. Is the language employed in the foregoing section comprehensive enough to include a water right and ditch, as a part of the improvements upon said section? It seems that both the plaintiffs and defendants, or some of them, own a portion of the land which was formerly a part of the military reservation, and they claim their water rights from Bear creek. Prior to the time of settlement upon the lands in question, and prior to the appropriation of the waters of Bear creek by any one, both the land and the water were the property of the government. When the government established the reservation, it owned both the land included therein, and all the water running in the various near-by streams to which it had not yielded title. It was therefore unnecessary for the government to "appropriate" the water. It owned it already. All it had to do was to take it and use it. When the government abandoned the military reservation, it also must have abandoned the use of the water thereon, which was again

allowed to flow in its regular channel as a part of the public domain, subject to the appropriation of any one who sought to take it.

It appears affirmatively from the complaint in intervention that the government abandoned the reservation in 1886, and that it took no steps to dispose of it until the Act of February 13, 1891, was passed. The Act provides, as will be noticed, that the state is to select a section of land so as to embrace the buildings and improvements thereon. The word "embrace," in the sense used, means "to inclose, as by surrounding or encircling; hence to take in; comprehend." (Standard Dictionary.) The meaning of the section is made certain by the use of the word "thereon." The rule is that if the language of a statute is plain and unambiguous, and expresses a single, definite and sensible meaning, it must be interpreted literally. (Black on the Interpretation of Laws, Sec. 26.) The language used is "the buildings and improvements thereon."

While the general rule is that the description in private grants is construed in favor of the grantee, the reverse is the rule with regard to public grants. This is upon the theory that the government is a trustee for the public, and therefore the language of a grant by the government is construed in favor of the grantor; i. e., the people. As said in *Newton* v. *Commissioners,* 100 U. S. 548, 25 L. Ed. 710: "No grant can be raised by mere inference or presumption, and the right granted must be clearly defined. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420, 9 L. Ed. 773, 938." In speaking of a grant of public land, the court, in *Dubuque & Pacific R. Co.* v. *Litchfield,* 23 How. 66, 16 L. Ed. 500, said: "All grants of this description are strictly construed *against* the grantees. Nothing passes but what is conveyed in clear and explicit language." And in *Hannibal & St. Joseph R. Co.* v. *Missouri River Packet Co.,* 125 U. S. 260, 8 Sup. Ct. 874, 31 L. Ed. 731, the court said: "But if there be any doubt as to the proper construction of this statute—and we think there is none—then that construction must be adopted which is most advantageous to the inter-

ests of the government.    The statute, being a grant of a privi-
lege, must be construed most strongly in favor of the grantor.
*Gildart* v. *Gladstone,* 12 East. 668, 675; *Charles River Bridge*
v. *Warren Bridge,* 11 Pet. 420, 544, 9 L. Ed. 773, 938; *Du-
buque & Pacific Railroad* v. *Litchfield,* 23 How. 66, 16 L. Ed.
500; *The Binghamton Bridge,* 3 Wall. 51, 75, 18 L. Ed. 137;
*Rice* v. *Railroad Co.,* 1 Black, 358, 380, 17 L. Ed. 147; *Leaven-
worth, Lawrence & Galveston Railroad* v. *United States,* 92 U.
S. 733, 23 L. Ed. 634; *Fertilizing Co.* v. *Hyde Park,* 97 U. S.
659, 24 L. Ed. 1036."

The question at once arises, if the water right was appurte-
nant to the reservation, was it appurtenant to the whole, or sim-
ply to that portion of it which the state of Montana selected?
The question cannot be answered from the record.    The only
inference is that the government, when it abandoned the reser-
vation, intended that the water should continue to flow in its
natural channel, and to be subject to appropriation by any one
who should take it and use it for beneficial purposes, possibly
upon land included within the reservation.    Had the government
desired so to do, it could have granted the right to the use of the
water in express terms, but this it did not do.    Furthermore, it
appears from the complaint in intervention that the ditch where-
by the water was conveyed extends for a long distance beyond
the confines of section 15 to the point where it taps Bear creek.
Can it be said that the grant conveyed that portion of the ditch
which is not upon section 15, when the language of the grant is
the "improvements thereon"?

Following out the rule that public grants must be construed
in favor of the grantor, there can be no question but that the
government did not grant to the state of Montana anything but
that which is expressly mentioned, and therefore did not attempt
to grant any right to the use of the waters of Bear creek.

It follows that the judgment should be affirmed.

PER CURIAM.—For the reasons given in the foregoing opin-
ion, the judgment is affirmed.

Mr. Justice Holloway, being disqualified, takes no part in this decision.