394 P.2d 313

Edgar Alvin JOPLIN, deceased, by Harlan Joplin, Executor, and Ella May Joplin, widow of Edgar Alvin Joplin, Plaintiffs-Respondents,

v.

Albion L. KITCHENS and Marguerite Kitchens, husband and wife, Defendants-Appellants.

No. 9270.

Supreme Court of Idaho.

July 28, 1964.

Charles S. Stout, Boise, for appellants.

Elam, Burke, Jeppesen & Evans, Boise, for respondents.

TAYLOR, Justice.

Plaintiffs (respondents) brought this action to quiet their title to a tract of land located south of the north channel of the Boise river, in Ada county. Plaintiffs are the owners of Lot 6, Section 16, T. 4 N., R. 1 E.B.M., and claim the land in dispute as a part of that lot. They through their predecessors acquired and held title to the land described as it appeared on the original government plat; that is, the east and west side lines extended to the north channel of the Boise river. The original meander line was not their north boundary and their ownership extended to the mesne highwater mark on the south bank of the north channel. Yeakel v. Meyer, 81 Idaho 100, 337 P. 2d 597 (1959); Smith v. Long, 76 Idaho 265, 281 P.2d 483 (1955); Younie v. Sheek, 44 Idaho 767, 260 P. 419 (1927).

Defendants (appellants) allege three defenses: title by adverse possession; title by purchase; and estoppel in pais. At the trial they abandoned their claim of title by adverse possession.

Defendants' claim of title by purchase was based upon a deed from one W. L. Clark and wife who were the apparent owners of Lot 3, Section 16. Lot 3 lay on the north side of the north channel of the river, opposite to plaintiffs' Lot 6, according to the original government survey of 1868. The deed, dated March 21, 1955, on its face purports to convey land in Lot 2, which was not owned by the grantor Clark. Defendants contended the description was erroneous and that the parties intended to convey certain land owned by the grantors in Lot 3; that the land in dispute was separated from the original Lot 3 by avulsion; that it remained a part of Lot 3, and was conveyed to them by the Clark deed.

The trial court did not specifically find, but for purpose of decision assumed, that the Clark deed conveyed to defendants whatever interest Clark had in the land in dispute.

The court found the land involved was added to the plaintiffs' Lot 6 by accretion over a period of years. This finding is supported by the record. There was no evidence of a sudden or perceptible change in the course of the river channel to support a finding of avulsion. Gubser v. Town, 202 Or. 55, 273 P.2d 430 (1954); Goins v. Merryman, 183 Okl. 155, 80 P.2d 268 (1938); Wyckoff v. Mayfield, 130 Or. 687, 280 P. 340 (1929); Harper v. Holston, 119 Wash. 436, 205 P. 1062 (1922); 11 C.J.S. Boundaries § 34; 56 Am.Jur., Waters, §§ 476, 477.

In support of their contention that plaintiffs are estopped to assert their title against defendants, the latter call attention to the evidence of their occupation and use of the property and improvements made thereon, all with the knowledge and acquiescence of the plaintiffs. In regard to improvements, the court found:

"It is the further finding of this court that after obtaining the deed from Clark and the deed from the owner of Lot Two in Section 16, defendants commenced in the spring of 1955 to fence all of the land shown as usable land. This included all of the lands claimed by the plaintiffs herein. In April of 1955 defendants put a 30-inch concrete culvert across a ditch or slough adjoining the five-acre tract shown as Area "C" on Exhibit 1. This work was done at the cost of $254.00. Thereafter in the fall of 1955, and in each fall thereafter, defendants placed 35 to 50 head of cattle in the area in question during the winter months and in the spring removed these cattle to put them on summer range. In the

534

year 1956 defendants constructed a corral and loading chute on the five-acre tract. The loading chute is the most substantial improvement made by the defendants on the property. The corral and fencing are wooden posts and wire. The cost of these improvements being the amount of approximately $1,000."

The court concluded that defendants were not entitled to compensation for any increase in value of the land occasioned by their improvements, for the reason that their use and occupation of the land and the pasturage thereon for a period of at least six years was of sufficient value to offset any such increase in value. In any event, the improvements were not of such magnitude or character that defendants could not be adequately compensated therefor, or such as to require equity to give them title in order to prevent an injustice.

There was evidence on the part of plaintiffs that they consented to defendants using the land. This was denied by defendants. However, it is undisputed that plaintiffs knew of defendants' occupancy and use of the property and that they did not protest or object until in February, 1960, when defendants brought in equipment and commenced upgrading a portion of the land to raise its level above occasional or spring flood water. At that time plaintiffs personally, and by letter from their attorney, advised defendants that they owned the property, and demanded that defendants desist from any further activity thereon, and immediately remove all improvements placed thereon by them. Other than the occupation and activity of defendants upon the property, plaintiffs had no notice that defendants claimed any title or right therein. The Clark deed purporting as it did to describe land in Lot 2, could not have served as notice to plaintiffs that defendants had acquired or claimed to have acquired any interest in the land. But in 1960 when defendants undertook to change the character of the land itself, at considerable expense, it became apparent to plaintiffs that they were claiming an interest greater than a mere permissive use. Plaintiffs could no longer safely remain silent, and they acted promptly. There was no evidence that plaintiffs had done or said anything which would have misled or caused defendants to believe that plaintiffs did not claim ownership of the property. Years earlier, plaintiffs had fenced the eastern boundary of the property. That fence had been washed away by the unusually heavy spring floods in 1943 and had not thereafter been replaced. However, there is no evidence that defendants knew of this prior fence. The plaintiffs were not themselves using the land during the years here involved and had allowed hunters, fishermen, picnickers and other pleasure seekers to use it without interference.

■ Under the circumstances here present, mere silence on the part of plaintiffs, as to defendants' occupancy, was not sufficient to transfer the title to defendants by means of estoppel.

"Mere silence of itself will not raise an estoppel. To make the silence of a party operate as an estoppel the circumstances must have been such as to render it his duty to speak, and there must also have been an opportunity to speak.

"It is essential that the one claimed to be estopped should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence. Silence will not support an estoppel unless the person claiming an estoppel justifiably relied on the silence to his prejudice, and such conduct in reliance must be intended or reasonably anticipated by the one who remained silent.

"One cannot claim an estoppel based on silence where he had actual knowledge of the facts or the means of acquiring knowledge. One may not fail to avail himself of readily accessible sources of information and rely on the silence of another who has been guilty of no act calculated to induce the party claiming ignorance to refrain from investigating." 31 C.J.S. Estoppel § 87.

"Discussing estoppel in the case of Henshaw v. Bissell, 18 Wall 255, 271, 21 L.Ed. 835, 841, Justice Field, speaking for the court, said:

" 'For its application there must be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud.' " Little v. Bergdahl Oil Co., 60 Idaho 662, 672–673, 95 P.2d 833 (1939).

Rich v. Burdick, 83 Idaho 335, 362 P.2d 1088 (1961); Swanson v. State, 83 Idaho 126, 358 P.2d 387 (1960); Charpentier v. Welch, 74 Idaho 242, 259 P.2d 814 (1953); Aker v. Aker, 52 Idaho 713, 20 P.2d 796 (1933), cert. den. 290 U.S. 587, 54 S.Ct. 80, 78 L.Ed. 518; Froman v. Madden, 13 Idaho 138, 88 P. 894 (1907); 19 Am.Jur., Estoppel, § 55.

■ The findings of the court are supported by substantial, competent evidence and the conclusions and judgment quieting plaintiffs' title are supported by the findings.

Judgment affirmed.

Costs to respondents.

KNUDSON, C. J., and McQUADE, McFADDEN and SMITH, JJ., concur.