No. 12379

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

GERTRUDE M. ROE,

Plaintiff and Appellant,

-vs-

ABE B. NEWMAN, a single man; All the
heirs known and unknown of Abe B. Newman,
deceased; GLACIER PIPELINE COMPANY, a
Corporation and JEAN KING RAHN,

Defendants and Respondents.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Joseph P. Hennessey argued, Billings, Montana.

For Respondents:

Crowley, Kilbourne, Haughey, Hanson and Gallagher,
Billings, Montana.
Frank A. Gallagher argued, Billings, Montana.

---

Submitted: March 26, 1973

Decided: MAY - 3 1973

Filed: MAY - 3 1973

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff Gertrude M. Roe initiated this quiet title action in the district court of Yellowstone County. One of the named defendants, Jean King Rahn, filed a cross complaint to quiet title to the property in question to her. The case was tried to the court and written briefs, exhibits and stipulations of facts were submitted. The trial court found in favor of defendant and cross complainant, Jean King Rahn, and entered an order quieting title to the disputed property in her favor. From that ruling and from the court's order denying her motion for a new trial, Gertrude M. Roe brings this appeal.

The following is an approximate diagram of the properties owned by the litigants and the disputed property:



- 2 -

Jean King Rahn is the undisputed owner of lots designated on the original plat as Government Lot 4 located in Section 15, Township 1 South, Range 26 East in Yellowstone County and Government Lot 1 adjacent to Lot 4 in Section 16.

Gertrude M. Roe is the undisputed owner of an island in the Yellowstone River in Section 15, near the Rahn property and separated from the north river bank by a high water channel.

The land in dispute is a narrow strip of river bank bordered on the north by a jointly maintained fence line over 40 years old and on the south by the high water channel of the river. Both litigants filed certificates of survey. The surveys overlap concerning the disputed strip. It appears from the record that livestock on the Roe property would, when the water level permitted, cross onto the disputed strip of land to graze, and that Mrs. Roe occasionally cut firewood on the strip.

Mrs. Rahn contends the fence was merely a convenience fence enclosing her lands and was never acknowledged as a boundary.

It appears the original established southern boundary of Lot 4 was a considerable distance north of the present river bank. Mrs. Rahn claims ownership up to the river bank on the basis that the land accreted to her Lot 4. It also appears Mrs. Roe's island was at some time contiguous to the south bank of the Yellowstone River, and the old Washington Street bridge across the river abutted on the eastern end of the island. By reason of this, and her contention that the disputed area is heavily wooded, Mrs. Roe claims the character of the land is not accreted or alluvion, but rather resulted from avulsion.

Tax receipts introduced by Mrs. Rahn show that between 1947 and 1958 she, or her predecessors in interest, paid taxes on Lot 4 and Lot 1 and on 30 acres of "accrued land along river". Between 1959 and 1969 the 30 acres of "accrued land along river" was assessed only to Lot 1 in Section 16, but were paid by Mrs. Rahn. Mrs. Roe made no claim to payment of taxes on the disputed strip prior to 1970, but in 1970 and subsequently, both parties paid taxes in conformity with their overlapping surveys.

Mrs. Rahn pointed out in her chain of title mesne conveyances and quiet title actions which purported to establish title to and convey "accrued land" extending the southern boundary of Lot 4 down to the river bank.

Mrs. Roe specifies three assignments of error:

1. The trial court erred in its finding of fact No. 1 in holding that the lands in question had accreted to the land of defendant and counterclaimant Jean King Rahn.

2. The trial court erred in its finding of fact No. 2 holding that the plaintiff Gertrude M. Roe had no claim to the land in dispute.

3. The court erred in dismissing plaintiff Gertrude M. Roe's motion for a new trial.

Assignment of error No. 1. The record shows the disputed strip is not physically contiguous to the property owned by Mrs. Roe, but is separated from it by the high water channel of the river. The disputed strip is physically contiguous to property claimed by Mrs. Rahn by reason of accretion. For purposes of legal classification of riparian landowners, the Yellowstone River at this point is considered to be a navigable waterway. Section 67-712, R.C.M. 1947, provides:

> "Boundaries by water. Except where the grant under which the land is held indicates a different intent, the owner of the land, when it borders on a navigable lake or stream, takes to the edge of the lake or stream at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream."

Section 67-302, R.C.M. 1947, provides that the state of Montana is the owner of the land underlying navigable waterways, and in the event of an avulsive change in the course of the navigable waterway the state is entitled to the land previously occupied by the watercourse. United States v. Eldredge, 33 F.Supp. 337. The 1878 W.W. deLacy government survey indicates the island owned by Mrs. Roe was, at some time, contiguous to the south bank of the Yellowstone River. The issue of possible state land claims under an abandoned riverbed theory was not sufficiently developed by the

- 4 -

litigants to permit further comment in this opinion on that point.

Concerning the legal presumptions of "accretion" versus "avulsion", 65 C.J.S. Navigable Waters § 86(c), states in pertinent part:

> "In the event of a dispute as to whether land changes resulted from avulsion or otherwise, the presumption is that it resulted from accretion or erosion; and the land concededly lying between riparian lots, as surveyed by the government, and the present bank of a stream will be presumed to be the result of accretion and not of avulsion. One claiming a change was by avulsion rather than by accretion has the burden of proving the avulsion."

See: Dartmouth College v. Rose, 257 Iowa 533, 133 N.W.2d 687; Joplin v. Kitchens, 87 Ida. 530, 394 P.2d 313.

However, this is not to say that there is no burden of proof as concerns claimed accretions. 65 C.J.S. Navigable Waters § 85(b) states:

> "The party claiming accretions must prove his right thereto by a preponderance of the evidence."

See: McCafferty v. Young, 144 Mont. 385, 397 P.2d 96.

It appears that Mrs. Rahn merely relied on the presumption favoring accretion over avulsion and Mrs. Roe's failure to affirmatively prove avulsion. Mrs. Rahn did not carry the burden of proving her right to the claimed accretions or even the fact of accretion.

Concerning the meander lines appearing in the early government surveys of the area, this Court stated a general rule in Faucett v. Dewey Lumber Co., 82 Mont. 250, 257, 266 P. 646:

> "The general rule adopted by state and federal courts is that meander lines run in surveying fractional portions of public lands bordering upon navigable bodies of water are not run as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the lake or river, in order to ascertain the exact quantity of the upland to be charged for. The title of the grantee is not limited to such meander lines; the waters themselves and not the meander lines constitute the real boundary. [Citing cases]."

However, Eldredge demonstrates an exception to this general rule by the application of section 67-1518, R.C.M. 1947:

- 5 -

"A grant is to be interpreted in favor of the grantee, except that a reservation in any grant, and every grant by a public officer or body, as such, to a private party, is to be interpreted in favor of the grantor."

Here, it was never shown that the southern boundary of Lot 4 was established by reference to a meander line appearing on a survey. Rather it appears that the southern boundary of Lot 4 was established along a slough or ditch running southwesterly between the east and west boundaries of Lot 4; joining the east boundary at a point 1850 feet south of the north boundary of Section 15, and joining the west boundary at a point 2305 feet south of the north boundary of Section 15. From a survey prepared for Mrs. Rahn in 1969, it appears the east boundary of Lot 4, including "accreted" land to which she claims ownership, is 2501.9 feet in length, extending from the river bank to the north boundary of Section 15. This is an extension of 651.9 feet from the original plat of Lot 4.

Tax receipts introduced by Mrs. Rahn show that between 1947 and 1958 taxes were paid by her or her predecessors on 30 acres of "accrued land along river" assessed jointly to adjacent Lots 1 and 4. Then, between 1959 and 1969 the assessment for 30 acres of "accrued land" was attached entirely to Lot 1 in Section 16, excluding Lot 4 in Section 15. The litigants are in dispute as to the reason for this change in assessment. Mrs. Rahn contends her undisputed ownership is in Sections 15 and 16; that the river frontage in Section 15 is 1320 feet and that the river frontage in Section 16 is 200 feet; the disputed strip is in Section 15. She further contends the change in assessment of the "accrued" land between 1959 and 1969 was due to a transcription error because it was physically impossible to have 30 acres of "accrued" land in Section 16.

Mrs. Roe disagrees with Mrs. Rahn's contention. However, she does not fully explain on what basis. She does claim that under the original grant in Mrs. Rahn's chain of title the south boundary was placed along a ditch or slough lying considerably

north of the river bank (involving a much larger land area than the strip which is actually in dispute). Mrs. Roe contends that subsequent intervening quiet title actions and property transfers by warranty deed, appearing in the Rahn chain of title, would be ineffectual in extending the area of the original Lot 4 down to the river bank, even though they purported to do so. Under this contention, title to the disputed strip, and indeed a considerably larger strip, is not in either of the litigants, but rather in either the federal or state government. For example, if it were shown that the land configuration is now substantially the same as when originally platted, and no accretion or avulsion took place, the federal government could assert claim to the section of river bank land not conveyed in the original grant. Or, if avulsion was proved and it was shown the land in question was previously the Yellowstone River bed, the state could assert claim to the land.

The rule appears well settled that possession, occupancy or use, whether adverse or for whatever length of time, cannot secure title as against the government. Bode v. Rollwitz, 60 Mont. 481, 199 P. 688; United States v. Eldredge, supra.

The issues raised by Mrs. Roe create a dilemma which is not fully or satisfactorily answered by Mrs. Rahn. Mrs. Rahn's contentions concerning payment of taxes on 30 acres of "accrued" land and the related claimed transcription mistake; the mesne conveyances by warranty deed purporting to convey the tract of "accrued" land between her lots and the river; and the intervening quiet title actions purporting to confirm title to the tract between her lots and the river beg the real issues: (1) What was the southern boundary of Lots 1 and 4 under the original land grant by the United States Government? (2) Regardless of the "common designation" of the land between Lots 1 and 4 and the river, what is its actual history and geological character?

In summary, it appears both litigants point to weaknesses in their adversary's title claim, but fail to establish the strength

of their own. Consequently, we find some merit in Mrs. Roe's first assignment of error. We see nothing in the record which conclusively proves that Mrs. Rahn has title to all the "commonly designated accreted land" adjoining her lots and bordering on the river, or even that the land was, in fact, accreted.

Assignment of error No. 2. We find the trial court was correct in holding that Mrs. Roe had proven no claim to the disputed strip. She had not satisfied the requirements of sections 93-2506 through 93-2513, R.C.M. 1947; nor did she demonstrate valid color of title. She merely, as we have hereinabove discussed, demonstrated weakness in the claim of Mrs. Rahn.

Assignment of error No. 3. We hold that a motion for a new trial is meritorious where, as here, a determination of fact was made which was erroneous or not sufficiently supported by the evidence before the court. Sections 93-5601 through 93-5604, R.C.M. 1947.

The decision and order of the trial court are reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 8 -