523 P.2d 1375

**BANK OF COMMERCE, a corporation, Plaintiff-Respondent,**

v.

**INTERMOUNTAIN GAS COMPANY, a corporation, Defendant-Appellant.**

No. 11495.

Supreme Court of Idaho.

June 27, 1974.

Rehearing Denied July 23, 1974.

Craig B. Marcus of Marcus & Marcus, Boise, for defendant-appellant.

W. Joe Anderson of Sharp, Anderson & Bush, Idaho Falls, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from summary judgment in favor of plaintiff. The action results from an assignment of accounts receivable and payment of those accounts to the assignor rather than the assignee. We affirm.

During the year 1970, Swanson, a welding and excavating contractor, was performing services as an independent contractor for defendant-appellant Intermountain Gas Co. On March 6, 1970 plaintiff-respondent Bank of Commerce entered into an agreement with Swanson to extend a line of credit enabling Swanson to meet his obligations in the performance of his contract with Intermountain Gas.

A "Security Agreement Covering Revolving Accounts Receivable" was entered into on that date between Swanson and the Bank wherein Swanson as debtor assigned and granted to the Bank, as the secured party, a security interest "in all of debtor's accounts receivable now existing or at any time hereafter arising and the proceeds thereof to be received from Intermountain Gas Company, Idaho Falls, Idaho." Notice of that assignment of accounts receivable was delivered to the Idaho Falls office of Intermountain Gas, together with a copy of the security agreement. The notice of the assignment was in letter form and contained a request that any checks issued in payment of indebtedness from Intermountain Gas to Swanson be made payable to both Swanson and the Bank. In compliance with the Uniform Commercial Code, I.C. § 28-9-401, the security agreement was thereafter filed with the Secretary of State and also with the county recorder of Bonneville County.

Thereafter the Bank made a total of six loans to Swanson which, during a period of eight months, totaled $21,330. Swanson repaid $12,330, leaving an unpaid balance on said loans of $9,000. During said period of time and terminating in March 1971, Intermountain Gas, in payment of indebtedness to Swanson, issued 18 checks totaling approximately $40,000. Two of those checks, one of April 3, 1970, and the second of March 29, 1971, totaling an amount of approximately $4,000, were made jointly to the Bank and Swanson. The remaining checks were issued directly to Swanson and cashed by him. Swanson defaulted in the payment of the loans made to him by the Bank as aforesaid in the approximate amount of $9,000, and declared bankruptcy a short time thereafter.

The Bank brought this action against Intermountain Gas for the loss that it had suffered by the failure of Intermountain Gas to honor the security agreement and the interest in Swanson's accounts receivable which had been assigned to the Bank. Intermountain Gas filed a general denial and a demand for a jury trial. The case was called for trial and a jury was duly impaneled. At that juncture, Intermountain Gas filed a motion to amend its answer to include an affirmative defense. The motion was resisted by plaintiff but permitted by the court, and the trial was vacated upon motion of the Bank.

In its motion to amend its answer, Intermountain Gas set forth a number of theories. It alleged that two of the said checks were made payable by Intermountain Gas to Swanson and the Bank at the request of the Bank; that the Bank had knowledge that the other 16 checks were payable only to Swanson and "voiced no objection thereto;" and that the Bank was therefore estopped to assert any claim against Intermountain Gas and had waived any right of action against the Bank for violation of the security agreement and assignment of the accounts receivable. Depositions and affidavits were taken and filed, together with demands for admissions and the answers thereto. Thereafter plaintiff moved for summary judgment which was granted by the court. Defendant appealed.

At the outset we note that appellant's brief in its "Assignments of Error" complains only that the trial court erred in entering summary judgment for plaintiff and erred in failing to enter judgment for defendant.

We assume that appellant's first assignment of error is directed at the trial court's failure to follow appellant's theory laid out in its "motion to amend answer," i. e., that the Bank's failure to protest the issuance of checks solely to Swanson constituted a waiver of the Bank's rights under the security agreement and assignment of accounts receivable from Intermountain Gas and that the Bank is therefore estopped from asserting its claim against Intermountain Gas.

The Uniform Commercial Code permits the assignment of accounts receivable to secure the performance of a promise and such assignment may include future as well as then existing accounts. I.C. § 28-9-102(1)(a) and I.C. § 28-9-204(3). Such a security interest must be perfected by filing a financing statement with the Secretary of State. I.C. §§ 28-9-302 and 28-9-401(1)(c). Other sections of the Uniform Commercial Code specify the duty and the authority of the account debtor after receiving notification of such assignment of accounts receivable and what constitutes notice thereof.

It is uncontroverted that the Bank mailed the letter of notification of the assignment of the accounts receivable, together with a copy of the security agreement-assignment of accounts receivable to Intermountain Gas. It is uncontroverted that such letter and instrument were placed in the same envelope and mailed on the same day. Intermountain Gas specifically acknowledges receiving the copy of the security agreement-assignment of accounts receivable. It is also uncontroverted that following the date of the mailing of the said security agreement on March 6, 1970, Intermountain Gas on April 3, 1970 issued a check in the amount of $3,877.50 made payable jointly to Swanson and the Bank, which check was remitted to the Bank. On the above basis it cannot be seriously argued that appellant had no notice of the assignment of the subject accounts receivable.

We deem the only question remaining to be whether, as asserted by appellant, the silence of the Bank amounted to acquiescence in Intermountain Gas's paying the checks directly to Swanson without regard to the request of the Bank that it issue checks jointly to Swanson and the Bank and without regard to the assignment of the accounts receivable. It is appellant's apparent position that such alleged acquiescence amounts to a waiver by the Bank of its right against Intermountain Gas and that the Bank is now estopped to assert an action against Intermountain Gas. There is nothing in the record nor does the appellant Intermountain Gas point out wherein the Bank indulged in any affirmative conduct that misled Intermountain Gas. It is only alleged that the silence of the Bank misled Intermountain Gas to its detriment.

This court had the occasion to speak to this area in the law in Joplin v. Kitchens, 87 Idaho 530, 394 P.2d 313 (1964). There the court said:

"It is essential that the one claimed to be estopped should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence. Silence will not support an estoppel unless the person claiming an estoppel justifiably relied on the silence to his prejudice, and such conduct in reliance must be intended or reasonably anticipated by the one who remained silent.

"One cannot claim an estoppel based on silence where he had actual knowledge of the facts or the means of acquiring knowledge. One may not fail to avail himself of readily accessible sources of information and rely on the silence of another who has been guilty of no act

calculated to induce the party claiming ignorance to refrain from investigating." 87 Idaho at 535, 394 P.2d at 315.

It was clear from the record before the trial court upon the motion for summary judgment, and it is clear here, that Swanson assigned both his then present and future accounts receivable from Intermountain Gas to the Bank. It is also clear that Intermountain Gas objected to and disliked what was demanded of it. Nevertheless Intermountain Gas complied with the demand insofar as the first check and the last check were concerned. Furthermore, Intermountain Gas had a continuing contractual relationship with Swanson and could have ascertained any fact regarding this matter either from Swanson or from the Bank. When Intermountain Gas failed to comply with the assignment of Swanson's accounts receivable, it did so at its own peril.

Our disposition of appellant's first assignment of error to the effect that judgment was correctly entered for respondent makes any consideration of appellant's second assignment of error unnecessary.

Judgment is affirmed. Costs to respondent.

DONALDSON, McQUADE, McFADDEN, and BAKES, JJ., concur.