JUSTICE McKINNON,
dissenting.
¶46 I dissent from the Court’s decision for a number of reasons. First, the Court applies a statute, § 70-1-516, MCA, which was never raised by the parties at trial or considered by the District Court. The Court departs from our well-recognized rule that we will not consider an issue raised for the first time on appeal, reasoning that the Teisingers argued “the court should resolve the deed’s ambiguity in their favor” and that the “statute is additional authority that supports their legal theory.” Opinion, ¶ 26. This begs the question of when an argument or issue that supports a party’s position would ever be considered unpreserved for appellate review. In cherry picking what arguments we deem to be raised — based perhaps upon the outcome we would like to reach — we fail to provide appropriate guidance to litigants regarding what issues may be raised on appeal and inevitably invite a multitude of unpreserved claims. Here, in particular, the decisive factor in the Court’s analysis is the presumption contained in § 70-1-516, MCA — an issue never raised or considered by the District Court.
¶47 Second, the rule that we will not consider issues raised for the first time on appeal exists for good reason. Primarily, it assures that through the adversarial process, all arguments and contingencies are raised and considered before this Court establishes a new rule of law or binding precedent. Simply put, it ensures accuracy of the decision making process, as well as its integrity. Here, we have held that § 70-1-516, MCA, is a legislative directive to interpret language of a reservation in a grant in favor of the grantor. Although we state the statute “plainly” requires such an interpretation, it is my opinion that we have failed to observe a distinction made by the statute between a public grant and one that is between private parties.
¶48 “A grant is to be interpreted in favor of the grantee, except that a reservation in any grant and every grant by a public officer or body, as such, to a private party is to be interpreted in favor of the grantor.” Section 70-1-516, MCA (emphasis added). The Court has seized upon the language of the statute’s exception to apply a presumption contrary to the general rule requiring interpretation in favor of the grantee. However, “[ajccording to the general rule a public grant is to be interpreted in favor of the grantor, whereas one between private parties is to be interpreted in favor of the grantee.” U.S. v. Eldredge, 33 F. Supp. 337 (D. Mont. 1940); citing § 6852, RCM (1935). Deeds that convey mineral interests are subject to general rules governing contract interpretation, including the rule that “the deed will be *16 construed against the grantor rather than against the grantee, because the grantor selects his or her own words.” 53 Am. Jur. 2d Mines and Minerals § 185 (2016); see also § 28-3-206, MCA. However, “[b]y statute or rule of public policy, grants of property, including mineral interests, by the state may be required to be construed in favor of the state as grantor.” 53 Am. Jur. 2d Mines and Minerals § 185 (2016); see also Schwarz v. State, 703 S.W.2d 187, 29 Tex. Sup. J. 145 (Tex. 1986) (distinguishing between a conveyance between private parties and one where the State of Texas is the grantor; the latter providing an example of the exception to the rule that the reservation is to be construed in favor of the grantee). Thus, far from being plain, the Court embarks on territory heretofore never precisely addressed in our precedent and which has not been raised or considered by the trial court.
¶49 The Court relies upon Missoula v. Mix for the rule that the “language of a reservation in a grant is to be interpreted in favor of the grantor, which is a different rule from that which existed at common law and under many other state statutes.” Opinion, ¶ 28 (emphasis added). This language recognizes a distinction and was applied in the context of the grantor, in fact, being a public body — the City of Missoula. A political body was also the grantor in Mineral Cnty. v. Hyde, 111 Mont. 535, 111 P.2d 284 (1941), which was relied upon by the Court in Missoula v. Mix. We simply have never addressed the interpretation of the exception found in § 70-1-516, MCA, as it relates to a reservation between private parties. Accordingly, I would not reach the conclusion the Court has respecting § 70-1-516, MCA, given that it was neither raised nor argued at trial.
¶50 Regardless of whether a statutory presumption was appropriately applied, it is my opinion that the District Court, given the ambiguity of the reservation, correctly weighed and considered the extrinsic evidence in finding that the reservation was limited to then-existing oil and gas leases. The Teisingers claim entitlement to royalties based upon: (1) their heirs’ interpretation of two documents recorded in 1975; and (2) the payment pursuant to a title opinion of royalties to the heirs between 1976 and 1985.
¶51 The first document recorded in 1975 is entitled “Stipulation and Disclaimer” and was authored by the Teisinger themselves. The document claimed that the Teisingers had a continuing royalty interest. There was no evidence, either through testimony or service of the document, that the Sundheims were aware of the document. The District Court properly afforded the “Stipulation and Disclaimer” little *17 weight because of its inherently self-serving nature. The second document was a “Communitization Agreement,” which allowed development of the minerals on the property. The District Court found that that agreement reflects typical oil industry practice to obtain signatures from every person who conceivably has an interest in the minerals when development occurs. The document reflects that the Sundheims held an interest in the minerals; however, it does not identify any specific mineral or royalty interest owned by the Teisingers. The District Court similarly attributed little weight to this document.
¶52 Finally, royalty payments made to the Teisingers between 1976 and 1985 were based upon a title report subsequently determined to be in error by two title attorneys and the District Court. There was no evidence, as noted by the District Court, that the royalty payments were proper or that the Sundheims were aware of them. Our analysis circuitously adopts the title report, regardless of whether it was correct, without any basis in law.
¶53 Grants of real property should generally be interpreted in the same manner as contracts. Section 70-1-513, MCA. “A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting ...” Section 28-3-301, MCA (emphasis added). The Teisingers failed to present any evidence of the parties’ intentions at the time the 1953 Warranty Deed was executed. Their claim rests solely on self-serving actions and upon the payment of royalties, which there is no evidence the Sundheims were aware of.
¶54 Finally, and importantly, the District Court recognized that the unusual size of the reservation — a 3/5ths interest — counseled against finding that it continued beyond 1958. Moreover, the size of the royalty payment was identical to the portion of delay rentals and both were contained within a single sentence of the 1953 Warranty Deed. The context and practice of the oil industry and the construction of the royalty reservation supports the conclusion that the royalty payment was to terminate in 1958 upon termination of the lease related to the delay rentals.
¶55 In my opinion, the District Court’s factual findings were supported by substantial evidence and the court did not misapprehend the effect of the evidence. The Court has failed to indicate how the District Court’s findings were clearly erroneous and not supported by substantial evidence. While we may disagree with the weight to be given to the testimony of witnesses and evidence, these matters are left to the district court’s discretion. In re Marriage of Kovarik, 287 Mont. 350, 954 P.2d 1147 (1998). Finally, our decision rests squarely on the *18 “principle set forth in § 70-1-516, MCA,” Opinion, ¶ 38, which, in my view, is inappropriate to address. To the extent that we have supplanted our judgment for that of the District Court, ignored that the District Court relied on substantial evidence, and entertained an argument raised for the first time on appeal, I dissent.