NORTHWESTERN IMPROVEMENT CO., APPELLANT, *v.*
LOWRY, RESPONDENT.

(No. 7,671.)

(Submitted March 8, 1937.   Decided March 22, 1937.

[66 Pac. (2d) 792.]

*Messrs. Gunn, Rasch & Hall,* for Appellant.

294

*Mr. A. S. Ainsworth,* for Respondent.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought to secure an injunction against the defendant from using a certain lot in the town of Paradise, and the buildings thereon, as a place for the sale of vinous, spirituous, or fermented liquors as a beverage. After the case was at issue it was submitted to the trial court for judgment and decision upon an agreed statement of facts.

The plaintiff corporation was duly authorized to transact business within the state. In the year 1907 it acquired title in fee and the possession of certain lands which it purchased for the purpose of platting into a townsite and establishing a town on the line of the Northern Pacific Railway Company, where the selling of vinous, spirituous, and fermented liquors would not be permitted. These lands were acquired for the additional purpose of establishing a tie-treating plant on the lands where the sale of these liquors would not be allowed. In June, 1908, plaintiff platted a part of the lands described in the complaint and agreed statement of facts as a townsite and divided the same into blocks, lots, streets, and alleys. This plat was filed for record in the office of the county clerk and recorder of Sanders county on June 13, 1908. Since the platting and recording of the townsite the plaintiff has sold a large number of lots to various persons, giving them deeds for the lands sold; however, plaintiff still owns in fee and has possession of a large number of lots in the town which are not sold, and has possession of other portions of the land thus acquired which are not embraced in the townsite. The Northern Pacific Railway Company has established a division point at Paradise and a large

number of its employees reside in the town of Paradise, and the tie-treating plant has been established and a large number of men are there employed. Many persons who have purchased lots have erected dwellings and business buildings thereon and are now occupying the same.

In each deed and conveyance executed and delivered by the plaintiff to purchasers for lots in the townsite and for the lands not embraced within the townsite the plaintiff inserted the following covenant and condition: ''The grantor has made and recorded a plat of the townsite of Paradise, which contains the premises in question and proposes to deed other premises in the plat to other purchasers. It inserts in all the conveyances of lots therein the covenant and condition following, which is also made a part of this conveyance, viz.: It is agreed that the premises conveyed shall not be used as a place for the sale of vinous, spirituous or fermented liquors as a beverage, nor for gambling, nor for any immoral purpose. The observance of this covenant is made a condition and if at any time the grantee, his assigns, heirs, or legal representatives, shall use the premises contrary to the terms of this covenant, then this conveyance shall be void, the premises immediately revert to the grantor, and the grantor may forthwith enter upon and take possession of the same.''

In March, 1910, the plaintiff for a valuable consideration executed and delivered a deed to one Louis M. Linden for lot No. 13, in block 2, of the townsite of Paradise, which was recorded on December 28, 1911. This deed contained the covenant quoted supra. In December, 1935, and in January, 1936, the defendant completed the construction of a building on this lot and is now using the building for the sale of fermented liquor as a beverage—namely, beer—and has continued, since January 15, 1936, to sell fermented liquor without the consent of the plaintiff. Prior to the erection of the building on the lot of the defendant, he had knowledge of the covenants and conditions contained in the deed executed by the plaintiff, and prior to the erection thereof defendant was notified that plain-

tiff would not waive any of the conditions and covenants in the deed relating to the sale of liquor in Paradise, and would not grant the defendant permission to operate a beer parlor on this lot or in the town. The defendant refused to stop selling beer as a beverage in the building erected on his lot.

In the year 1925 Sanders county, through its proper officers, made a legal assessment and levy for state, county, school, and other taxes upon this lot. Due notification was made of the assessment and levy upon the owner of the lot. In November of that year these taxes became delinquent. The lot was sold for delinquent taxes and, after due and legal notice, on September 30, 1929, a tax deed was regularly issued by the treasurer of Sanders county to the county for the lot. Thereafter, on May 6, 1930, the county, as the owner of the lot, sold and conveyed it to one John F. Hauge; he thereafter sold it to the defendant, who has since December 10, 1935, been, and now is, in actual and exclusive possession.

The court found as conclusions of law that the conditions and covenants set forth in the deed were not binding upon the defendant, and therefore plaintiff could not enforce the same and that defendant was entitled to a decree of court dismissing the action upon the merits. Thereafter judgment of dismissal was entered in conformity with these conclusions. The appeal is from the judgment. Error is assigned upon the making of the conclusions of law, and the rendering and entering of the judgment.

The agreed statement of facts discloses that the levy of the tax and all proceedings leading up to the tax deed were in all respects regular and binding. The primary question for solution in this case is whether, as the result of the issuance of the tax deed, the restrictive covenants contained in the deed from the plaintiff to the original purchaser of this lot are thereby rendered of no force and effect as against the defendant.

In the case of *State ex rel. City of Great Falls* v. *Jeffries,* 83 Mont. 111, 270 Pac. 638, 640, this court said: "However, 'the legislature has power to provide either that a tax sale

shall create a new title, cutting off all prior liens, incumbrances and interests, or to provide that the tax purchaser shall acquire the interest only of the person in whose name the land was assessed or of the real owner.' (3 Cooley on Taxation, 4th ed., 2930, sec. 1492.) By the enactment of section 2215, Revised Codes 1921, providing that a tax deed conveys absolute title 'free from all incumbrances, except the lien for taxes which may have attached subsequent to the sale,' our legislature adopted the first course. The tax deed mentioned is not derivative, but creates a new title in the nature of an independent grant from the sovereignty, extinguishing all former titles and liens not expressly exempted from its operation.'' The court adhered to its pronouncement in the *Jeffries Case* in the case of *Richardson* v. *Lloyd*, 90 Mont. 127, 300 Pac. 254.

It will be observed that in this case no attempt is made to assert the right by the plaintiff as contained in the covenant, to claim title to the property in question. Such right was a possibility of reverter. (1 Tiffany on Real Property, 2d ed., 473.) The possibility of reverter, under the decisions cited supra, was annihilated by the tax deed proceeding. Still the question remains as to whether plaintiff may secure injunctive relief. Section 6749, Revised Codes, provides: ''The following land burdens, or servitudes upon land, may be attached to other land as incidents or appurtenances, and are then called easements: * * * 6. The right of transacting business upon land.'' Easements are sometimes divided into affirmative and negative. An ''affirmative easement'' is one which authorizes the doing of acts which, if no easement existed, would give rise to a right of action. A ''negative easement'' is one the effect of which is not to authorize the doing of an act by the person entitled to the easement, but merely to preclude the owner of the land subject to the easement from doing that which, if no easement existed, he would be entitled to do. (2 Tiffany on Real Property, 2d ed., 1179–1199.) The common illustration of an affirmative easement is a right of way over the land of another. The common illustrations of negative easements

are the right to have light passing to one's building over another's land, and the right to have one's building supported by such land. The nature of easements is well explained in an article in 27 Yale Law Journal, pp. 71, 72.

The lands to which an easement is attached is called the "dominant tenement"; the land upon which the burden or servitude is laid is called the "servient tenement." (Sec. 6751, Rev. Codes.) An easement may be appurtenant to land although the servient tenement is not adjacent to the land of the dominant tenement. (*Jones* v. *Stevens,* 276 Mass. 318, 177 N. E. 91, 76 A. L. R. 591; 19 C. J. 864; *Lindenmuth* v. *Safe Harbor Water Power Corp.,* 309 Pa. 58, 163 Atl. 159, 89 A. L. R. 1181; 9 R. C. L. 738.)

By the covenant contained in the original deed from the ▮ plaintiff to the first purchaser of the lot in question, a negative easement appurtenant to the remaining lands owned by plaintiff was created; the lands of the plaintiff being the dominant tenement, and the lot mentioned the servient tenement. In 3 Cooley on Taxation, fourth edition, section 1494, it is declared: "Ordinarily, a tax sale does not divest easements charged on the property sold. Thus, private easements of light, air and access of adjoining owners over the lands sold are not extinguished by the tax sale." The question arises: How is an easement assessed?

In *Hale* v. *County of Jefferson,* 39 Mont. 137, 101 Pac. 973, ▮ 975, this court gave consideration to the above question. There it was attempted by the county to assess a ditch leading to a placer mining claim together with a water right used in connection with the operation of the claim. It was there said: "Viewed as independent property rights, ditches and the right to use the water conveyed by them are property subject to taxation; but, when made appurtenant to lands, they have no independent use. So situated and used, the value of this species of property enters as an element into the value of the *corpus* or principal estate to which it is attached or appurtenant, and bears its proportionate burden of taxation by the added taxable

value which it gives to the principal estate. * * * To illustrate: A ditch and water right, attached to agricultural lands, add a large element of value to them, by contributing to their productiveness, which, in turn, determines their actual value. They are taxed when the lands are taxed upon their value thus increased. * * * The plaintiff's interest is a mere right of way, an easement in the land over which the ditch passes, which is attached to the plaintiff's mining lands." (See, also, *Stetson* v. *Youngquist,* 76 Mont. 600, 248 Pac. 196; *Ferguson* v. *Standley,* 89 Mont. 489, 300 Pac. 245.)

It is possible under our law to carve out of the same land separate estates which are separately assessed for the purpose of taxation. (*Superior Coal Co.* v. *Musselshell County,* 98 Mont. 501, 41 Pac. (2d) 14; *British-American Oil Producing Co.* v. *State Board of Equalization,* 101 Mont. 293, 54 Pac. (2d) 129, affirmed by the Supreme Court of the United States particularly upon this point, December 7, 1936, 299 U. S. 159, 57 Sup. Ct. 132, 81 L. Ed. ——.) It is generally held in jurisdictions where the rule is in force as declared by this court in *State ex rel. City of Great Falls* v. *Jeffries,* supra, that the foreclosure of a tax lien does not cut off easements that have been carved out of one property for the benefit of another. (*Crawford* v. *Senosky,* 128 Or. 229, 274 Pac. 306; *Tax Lien Co.* v. *Schultze,* 213 N. Y. 9, 106 N. E. 751, 752, Ann. Cas. 1916C, 636, L. R. A. 1915D, 1115; *Jackson* v. *Smith,* 153 App. Div. 724, 138 N. Y. Supp. 654, 656; *Blenis* v. *Utica Knitting Co.,* 73 Misc. 61, 130 N. Y. Supp. 740; *Tide Water Pipe Co.* v. *Bell,* 280 Pa. 104, 124 Atl. 351, 40 A. L. R. 1516, and note, 40 A. L. R. 1523.)

In the case of *Tax Lien Co.* v. *Schultze,* supra, it was said: "The assessment of the lot described in the judgment did not include the easements appurtenant to the adjoining real property. The assessment of the servient estate was subject to the easements included in the assessments of the dominant estate. As a necessary consequence it has been held that, on the foreclosure of a tax lien and a sale of the premises pursuant to sections 1035–1039 of the Greater New York Charter [Laws 1901,

C. 466, as amended by Laws 1908, C. 490, and Laws 1911, C. 65], private easements of light, air, and access of adjoining owners over the land sold are not extinguished. If property rights, which are excluded from an assessment, are sold or extinguished by a tax sale, there would be a taking of property without due process of law."

In the case of *Jackson* v. *Smith,* supra, it was written: "An easement is a servitude upon, and differs from an interest in, or lien upon, the land. It is not a part of, but is so much carved out of the estate in, the land, and is as much a thing apart from that estate as a parcel of the land itself conveyed from it. If the principle contended for by the respondent is sound, the owner of the dominant estate, who pays taxes upon a valuation which includes the value of his easements, must also, to protect his easements, pay taxes assessed on another's property, although the value of the easements is necessarily excluded from the assessed valuation thereof.

"It is unnecessary to determine the precise nature of a tax title. It doubtless is in the nature of a new and independent grant from the sovereign authority. (*Hefner* v. *Northwestern Mut. Life Ins. Co.,* 123 U. S. 747, 8 Sup. Ct. 337, 31 L. Ed. 309); but the assessment is the basis of it. The property assessed and the property conveyed upon the tax sale must be the same. If the assessment is only of the servient estate, only that can be conveyed on a tax sale; and, vice versa, if the conveyance on the tax sale, or on the foreclosure of a tax lien, is of all the estate or interests in the land, freed from servitude as well as liens thereon, then the assessment must be based upon the land as land, regardless of servitude as well as liens. As has been shown, in making the assessment a deduction must be made for easements, whereas none is made for liens and the like interests."

Counsel for the defendant relies strongly upon the case of *Alamogordo Improvement Co.* v. *Hennessee,* 40 N. M. 162, 56 Pac. (2d) 1127. The case involved a restrictive covenant very similar to the one in question. The land had gone to tax deed,

as here. The regularity of the tax proceeding was not in issue, but the sole question was whether the right of forfeiture and reversion contained in the deed survived the sale of the property under the tax deed proceedings. It was held that the right of forfeiture in reversion or possibility of reverter did not survive. We have no quarrel with the conclusion in that case, but the question there is not the question here, and therefore the case is not controlling.

Another case which is relied upon is that of *Hanson* v. *Carr*, 66 Wash. 81, 118 Pac. 927. The statute in Washington under consideration there was much broader than is our section 2215, which declares that the tax deed conveys absolute title free from all encumbrances except the lien for taxes which has attached subsequent to the sale. The Washington statute (Rem. & Bal. Code, sec. 9230) declared the lien "shall have priority to * * * any recognizance, mortgage, judgment, debt, obligation or responsibility to or with which said real estate may become charged or liable."

The negative easement here was appurtenant to the other lands owned by the plaintiff and was taxable as such, and when plaintiff's lands were so taxed, the taxes on the negative easement were extinguished so far as the easement was concerned. The trial court was in error in concluding that the restriction was obliterated by the tax deed proceedings. Restrictions of ▮ this character are valid. (*Cowell* v. *Colorado Springs Co.*, 100 U. S. 55, 25 L. Ed. 547.)

In this case the remedy by injunction is proper. In 4 Pomeroy's Equity Jurisprudence, section 1693, it is said: "Injunctions are frequently allowed to restrain the violation of covenants restricting the use of the land. 'When the owner of land enters into a covenant concerning it, when in a deed the grantor or the grantee covenants, or in a lease the lessor or the lessee covenants, concerning the land, concerning its use, restricting certain specified uses, stipulating for certain specified uses, subjecting it to easements or servitudes, and the like, and the land is

afterwards conveyed, or sold, or passes to one who has actual or constructive notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it, or will be restrained from violating it, at the suit of the original covenantee or of any other person who has a sufficient equitable interest in such performance.' '' (See, also, *Watrous* v. *Allen*, 57 Mich. 362, 24 N. W. 104, 58 Am. Rep. 363; *Richards* v. *Burdsall*, (N. J. Ch.) 10 Atl. 274.)

The judgment is reversed, and the cause remanded to the district court of Sanders county, with directions to vacate and set aside the judgment and conclusions of law heretofore made and filed, and to make conclusions of law in conformity with the views herein expressed, and to enter judgment granting the plaintiff an injunction in accordance with plaintiff's complaint.

Mr. Chief Justice Sands and Associate Justices Stewart, Morris and Angstman concur.