

DA 11-0746

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 125

NIGEL and JAMI DAVIS, husband
and wife,

        Plaintiffs and Appellees,

   v.

DON HALL, LORI STEWART, JERRY
JASICKO, and TERESA JASICKO,
and JOHN DOES 1-99,

        Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDV 2011-314
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Steven T. Wade, W. John Tietz, Browning, Kaleczyc, Berry & Hoven,
P.C., Helena, Montana

        For Appellees:

                Candace Payne, Mark Lancaster, Luxan & Murfitt, PLLP, Helena,
Montana

Submitted on Briefs:  May 30, 2012

Decided:  June 12, 2012

Filed:

_____
                         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The First Judicial District Court, Lewis and Clark County, determined that plaintiffs Nigel and Jami Davis hold an easement over the properties of defendants Don Hall, Lori Stewart, Jerry Jasicko, and Teresa Jasicko and that the Davises may use this easement for the purpose of accessing their nearby property. The District Court permanently enjoined Hall, Stewart, and the Jasickos from placing any gate across the easement unless they provide the Davises with a means to pass through such gate. Hall, Stewart, and the Jasickos now appeal. We affirm.

¶2 There are two issues on appeal:

1. Whether the 1974 Declaration of Easements and a 1974 certificate of survey referenced in the Declaration of Easements were sufficient, together, to create an access easement for the benefit of off-survey property.

2. Whether an express easement may be appurtenant to a dominant tenement that is not contiguous to the servient tenement.

We hold that the 1974 documents were sufficient to create an access easement benefitting the Davises' off-survey property. We further hold that an express easement may be appurtenant to noncontiguous property if both tenements are clearly defined and it was the parties' intent that it be appurtenant.

## BACKGROUND

¶3 The properties at issue are situated in Lewis and Clark County, to the west of Wolf Creek, in Township 15 North, Range 5 West, Montana Principal Meridian. They are arranged as follows. The Davises own the SE¼SE¼ of Section 7. Hall and Stewart own Lots 69 and 70 in Section 8. The Jasickos own Lots 71 and 72 in Section 8. The State of

2

Montana owns the SW¼SW¼ of Section 8, which separates the Davises' property from the lots owned by Hall, Stewart, and the Jasickos. The alleged easement (Denton Gulch Road) runs along the southern boundary of Lots 69 and 70, which is also the northern boundary of Lots 71 and 72.

¶4 The following diagram (with labeling added) was obtained from the Montana Cadastral website, http://svc.mt.gov/msl/mtcadastral/. This diagram is not included in the record, but it does represent the layout of the properties according to the diagrams that *are* included in the record.



The cadastral map depicts Denton Gulch Road as terminating at the east side of the State's property in the southwest quarter of Section 8. This is consistent with the certificates of survey at issue in this case (discussed below). The Davises allege that Denton Gulch Road actually continues through the State's property and then proceeds southwesterly through the Davises' Section 7 property and into State-owned land in

Section 18. However, although a road may exist, the question is whether the Davises have the right to use it. More specifically, the question in *this* case is whether Hall, Stewart, and the Jasickos may obstruct the Davises' passage along Denton Gulch Road across Lots 69, 70, 71, and 72. That question is what precipitated the instant action.

¶5      Hall, Stewart, and the Jasickos acquired their respective Section 8 lots in four separate purchases between 1985 and 2004. In 2004, Hall and Stewart placed a locked gate across Denton Gulch Road approximately where the road enters Lots 69 and 72 from the east. The Davises acquired the SE¼SE¼ of Section 7 in 2009. When the Davises first attempted to access their property, they encountered the locked gate across Denton Gulch Road. The Davises contacted Hall and Stewart about using the road, but Hall and Stewart (speaking on behalf of themselves and the Jasickos) refused to remove the gate or to open the road to the Davises.

¶6      The Davises filed suit against Hall, Stewart, and the Jasickos seeking a declaratory judgment that they have an express easement along Denton Gulch Road, over the defendants' Section 8 lots, for access to and from the Davises' Section 7 property. The Davises also sought injunctive relief to restrain Hall, Stewart, and the Jasickos from obstructing the Davises' use of the road.

¶7      The Davises' alleged easement is premised on a Declaration of Easements executed by Wolf Creek Canyon, Inc. (hereinafter, Wolf Creek Canyon) in July 1974 and thereafter filed with the Lewis and Clark County Clerk and Recorder. The Declaration of Easements recites that Wolf Creek Canyon is the owner of the following properties in Township 15 North, Range 5 West, Montana Principal Meridian:

4

Section 3:     All
Section 7:     NE¼ and E½SE¼
Section 8:     NW¼; S½NE¼; N½SW¼; NW¼SE¼, and SE¼SW¼
Section 9:     All
Section 10:    W½NE¼, and W½
Section 15:    All, except that portion lying north and east of the County
               Road
Section 16:    E½NW¼; NE¼SW¼ and NW¼SE¼
Section 17:    All

Wolf Creek Canyon's property ownership in 1974 included the parcels now owned by the Davises, Hall, Stewart, and the Jasickos in Sections 7 and 8.

¶8      The Declaration of Easements states that Wolf Creek Canyon (referred to in the document as "Declarant") has subdivided "a portion of the above described premises" into lots, which Wolf Creek Canyon held for sale, as shown on Certificates of Survey Nos. 245927, 245928, 246123, 246124, 246125, and 246126.   These certificates of survey, copies of which are included in the record, were filed with the Lewis and Clark County Clerk and Recorder in June 1974.   They depict lots in Sections 8, 9, 10, 15, and 16.  The Declaration of Easements further recites that

> roads have been laid out on said Certificates of Survey as and for access to the lots on said Certificates of Survey *as and for access to the remaining portion of the above described property owned by Declarant*, and Declarant desires to provide by means of such roadways and easements for roadways, access to *all of the above described premises* and desires to retain for its use and benefit and the use and benefit of other persons to whom Declarant may in the future sell portions of *the above described premises* the right of access thereto by way of such roadways and easements.  [Emphases added.]

Accordingly, the Declaration of Easements then states:

> NOW, THEREFORE, Declarant does hereby reserve for its use and benefit and the use and benefit of persons to whom it may sell *any portion of the above described lands*, and for the benefit of its successors and assigns, easements and rights of way over roadways shown on said

5

Certificates of Survey and easements and rights of way that may be shown on Certificates of Survey hereafter filed and any and all conveyances by it shall be subject to said easements for roadways and shall be subject to the right of access on behalf of Declarant and its successors and assigns and any person or persons to whom Declarant may sell or convey any land, and that the property hereinabove described shall be held, sold and conveyed subject to such easements for roads and right of access. [Emphasis added.]

¶9 Certificate of Survey No. 246124 (showing the subdivision of Wolf Creek Canyon's Section 8 property into 25 lots) was superseded by Certificate of Survey No. 248955. The latter certificate of survey, executed and filed with the Lewis and Clark County Clerk and Recorder in October 1974, merely corrected the location of the east quarter corner of Section 8, which is actually 30 feet south of that shown on the former certificate of survey. This correction is not material to the dispute in this case, and we thus shall hereafter refer to Certificate of Survey No. 246124 and Certificate of Survey No. 248955 as "the Section 8 Certificate of Survey."

¶10 The Section 8 Certificate of Survey depicts a narrow strip of land, labeled "60' ROAD EASEMENT," meandering through Section 8 from the east side of the section in a southwesterly direction. As shown on the diagram below, the easement proceeds along the southern boundaries of Lots 67, 68, 69, and 70 (which are the northern boundaries of Lots 74, 73, 72, and 71, respectively) and then terminates at the State's parcel in the southwest quarter of the section. In other words, the depicted easement does not reach Wolf Creek Canyon's (now the Davises') property in Section 7, due to the fact that there is an intervening parcel of land owned by another party (the State). Furthermore, no property within Section 7 is identified or referenced on the Section 8 Certificate of Survey.

6

¶11 Following is an excerpt of the Section 8 Certificate of Survey, showing only the southwest quarter of that section where the properties and easement are situated. Labeling has been added to identify the easement and the relevant property ownership. The locked gate across Denton Gulch Road (not shown here) is near the eastern boundary of Hall's, Stewart's, and the Jasickos' respective properties (i.e., roughly where the road enters Lots 69 and 72 from the east).



¶12 The parties filed cross-motions for summary judgment. They agreed that there were no genuine issues as to any material fact and that the only question before the court involved an interpretation of the foregoing written instruments, which is a question of law. *See Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT

159, ¶¶ 18-19, 338 Mont. 41, 164 P.3d 851. Each side argued that it was entitled to judgment as a matter of law. *See* M. R. Civ. P. 56(c).

¶13 The District Court interpreted the Declaration of Easements as having two purposes: first, to benefit the lots shown on the referenced certificates of survey; and second, to reserve an easement for access to "the remaining portion of the above described property owned by Declarant," i.e., the portion of Wolf Creek Canyon's total land holdings not shown on the referenced certificates of survey. The court reasoned that if the purpose of the Declaration of Easements was to benefit only the lots set out in the certificates of survey, then it was superfluous to list in the first recital the other properties owned by Wolf Creek Canyon and to include the language about "access to the remaining portion of the above described property owned by Declarant." The court concluded that the Declaration of Easements guaranteed Wolf Creek Canyon and its successors access over the surveyed lands to reach its other "above described" lands. In so doing, the District Court rejected Hall, Stewart, and the Jasickos' argument that the easement shown on the Section 8 Certificate of Survey cannot be used for the benefit of off-survey property. The court reasoned that while Wolf Creek Canyon's Section 7 property is not identified as a dominant tenement on the Section 8 Certificate of Survey, it is identified as a dominant tenement in the Declaration of Easements. Lastly, regarding the fact that the easement depicted on the Section 8 Certificate of Survey does not reach the Davises' Section 7 property but instead terminates at land owned by the State, the District Court opined that this "does not defeat Plaintiffs' right to use this easement." The court did not provide any analysis or cite any authority in support of this view, however.

8

¶14    The District Court entered judgment in favor of the Davises and permanently enjoined Hall, Stewart, and the Jasickos from obstructing the Davises' passage over Denton Gulch Road. Hall, Stewart, and the Jasickos now appeal.

## STANDARD OF REVIEW

¶15    We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. *Baker Revocable Trust*, ¶ 17. As noted, the material facts in this case are not in dispute. The only question is "which of [the parties], under the uncontested facts, is entitled to prevail under the applicable law." *Cole v. Valley Ice Garden, LLC*, 2005 MT 115, ¶ 4, 327 Mont. 99, 113 P.3d 275.

## DISCUSSION

¶16    Hall, Stewart, and the Jasickos argue two points against the Davises' claim of an easement over Section 8. First, they contend that under *Blazer v. Wall*, 2008 MT 145, 343 Mont. 173, 183 P.3d 84, the depiction of the easement on the Section 8 Certificate of Survey is insufficient to create an easement for the benefit of off-survey property. Second, they contend that the easement cannot be appurtenant to the Davises' Section 7 property because the easement is severed by the intervening State property. We address these two points as Issue 1 and Issue 2, respectively.

¶17    ***Issue 1. Whether the Declaration of Easements and the Section 8 Certificate of Survey were sufficient, together, to create an access easement for the benefit of off-survey property.***

¶18    An easement is a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon the land. *Blazer*, ¶ 24. An

9

easement may be "appurtenant" or "in gross." *Blazer*, ¶ 24. An easement appurtenant is one that benefits a particular parcel of land, i.e., it serves the owner of that land and passes with the title to that land. The benefited parcel is known as the dominant tenement or estate, and the burdened parcel is termed the servient tenement or estate. An easement appurtenant must have both a dominant tenement and a servient tenement. *Blazer*, ¶ 24. An easement in gross, by contrast, benefits the holder of the easement personally, i.e., not in connection with his or her ownership or use of a specific parcel of land. Thus, with an easement in gross, no dominant tenement exists and the easement right cannot pass with the title to any land. *Blazer*, ¶ 24. We discussed how to determine whether an expressly created easement is appurtenant or in gross in *Broadwater Dev., LLC v. Nelson*, 2009 MT 317, ¶ 34, 352 Mont. 401, 219 P.3d 492. We concluded that the easement at issue there was in gross. *Broadwater Dev.*, ¶ 37. In the present case, however, there is no question that the Davises claim an easement appurtenant, the dominant tenement being their Section 7 property and the servient tenement being the defendants' Section 8 lots.

¶19    An easement may be created by an instrument in writing (express easement), by operation of law (such as easements implied from necessity or existing use), by prescription, by condemnation, or by common-law dedication. *Yellowstone River, LLC v. Meriwether Land Fund I, LLC*, 2011 MT 263, ¶ 25, 362 Mont. 273, 264 P.3d 1065. The Davises claim an express easement arising out of the Declaration of Easements and the Section 8 Certificate of Survey. An express easement may be created by appropriate language in a written instrument, such as "I hereby reserve [or grant] an easement over Property A for the benefit of Property B." *Blazer*, ¶ 27; *Broadwater Dev.*, ¶¶ 27, 31. An

express easement may also arise from a reference in an instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described. *Blazer*, ¶ 27. The second approach is known as the easement-by-reference doctrine. "When the deed itself contains no language reserving (or granting) an easement, our easement-by-reference doctrine contemplates that an explicit reference in the deed to a plat or certificate of survey on which an easement is clearly depicted and adequately described is sufficient to establish the easement." *Blazer*, ¶ 41.

¶20 The central question in *Blazer* was whether the alleged easement had been "adequately described" on the referenced certificate of survey. *Blazer*, ¶ 45. We noted two requirements in this regard. First, the documents of conveyance must give the owner of the property being burdened by the servitude "knowledge of its use or its necessity." *Blazer*, ¶¶ 36, 51, 56-57. Second, the identities of the dominant and servient tenements must be "ascertainable with reasonable certainty" from the transaction documents. *Blazer*, ¶¶ 51, 54, 56-57. "[A]n easement appurtenant has not been 'adequately described' when the identity of the dominant tenement has been omitted and cannot be ascertained from the documents of conveyance." *Blazer*, ¶ 51. Thus, because Blazer's off-survey property was not an identifiable dominant tenement on the certificate of survey at issue, this Court held that the off-survey property could not benefit from the easement depicted on the certificate of survey. *Blazer*, ¶¶ 53-54 (opinion of the Court); *see also Blazer*, ¶ 79 (Morris, Leaphart, & Warner, JJ., dissenting) ("I concur with the Court's conclusion that COS 4446 could not, as a matter of law, create an easement burdening Tract 1 for the benefit of any properties not shown on the survey.").

¶21 In the present case, there is no dispute that the Section 8 Certificate of Survey—when viewed in isolation—fails to establish an easement for the benefit of off-survey property in Section 7. Indeed, the easement road depicted on the certificate of survey does not even *reach* the boundary between Sections 7 and 8. And the certificate of survey does not identify any property in Section 7 or indicate that any Section 7 property is to benefit from the depicted easement. The Davises correspondingly concede that "[i]f the Declaration of Easements did not exist, and the certificates of survey were the only documents conveying an easement right, the [defendants'] argument might bear fruit" under *Blazer*.

¶22 As the Davises correctly point out, however, "that is not the fact pattern here." We have not only the Section 8 Certificate of Survey, but also the Declaration of Easements. Because both of these documents were recorded, they "impart[ed] constructive notice of [their] contents to all interested parties." *Blazer*, ¶ 73 (discussing the recording statutes). According to the Declaration of Easements, Wolf Creek Canyon "reserve[d] . . . easements and rights of way over roadways shown on said Certificates of Survey." The "said Certificates of Survey" are listed above (*see* ¶ 8, *supra*) and include the Section 8 Certificate of Survey. Hence, Wolf Creek Canyon reserved a right-of-way over the "60' ROAD EASEMENT" depicted on the Section 8 Certificate of Survey. The Declaration of Easements further states that the easements are reserved for the use and benefit of Wolf Creek Canyon as well as the use and benefit of "persons to whom it may sell any portion of the above described lands." The "above described lands" include Wolf Creek Canyon's holdings in Section 7 (*see* ¶ 7, *supra*). Hence, the 60' ROAD

12

EASEMENT in Section 8 was reserved for the use and benefit of persons who may purchase the SE¼SE¼ of Section 7. Finally, the Declaration of Easements states that the roads laid out on the certificates of survey are for access to the lots on said certificates of survey and for access "to the remaining portion of the above described property owned by Declarant"—which, again, includes the Section 7 property. Hence, the 60' ROAD EASEMENT in Section 8 may be used for purposes of ingress to and egress from the SE¼SE¼ of Section 7.

¶23 There can be no doubt, then, that the use or necessity of the 60' ROAD EASEMENT and the identities of the dominant and servient tenements are ascertainable with reasonable certainty from the Declaration of Easements and the Section 8 Certificate of Survey. The SE¼SE¼ of Section 7 is a dominant tenement; Lots 69, 70, 71, and 72 (as well as the other Section 8 lots over which Denton Gulch Road passes) are the servient tenements; and the use or necessity of the easement is for access purposes.[1] Accordingly, the easement is "adequately described" in the Declaration of Easements and the Section 8 Certificate of Survey, when these two documents are read together.

¶24 Hall, Stewart, and the Jasickos do not deny this. Instead, they refuse to factor the express language of the Declaration of Easements into the analysis. They maintain that

---

[1] It should be noted that while Lots 69, 70, 71, and 72 are servient tenements in relation to the Section 7 property, they are dominant tenements in relation to the other Wolf Creek Canyon lots over which the various rights-of-way depicted on the certificates of survey pass. In other words, Lots 69, 70, 71, and 72 *benefit* from the road easements over Wolf Creek Canyon's other properties while at the same time being *burdened* by that portion of the Section 8 road easement which passes over Lots 69, 70, 71, and 72. *Cf. Pearson v. Virginia City Ranches Assn.*, 2000 MT 12, ¶¶ 1, 9-27, 298 Mont. 52, 993 P.2d 688 (the bridle path easement was created for the use of all lot owners in the subdivision).

"[w]hile it is optional to use a certificate of survey to describe a reserved easement, once that option is taken, the description of the easement on the certificate of survey **must** comport with the easement-by-reference doctrine established in *Blazer*" (emphasis in original). This statement is not entirely correct. *Blazer* dealt with a situation where the attempt to create an easement was made *solely* by means of depicting the easement on a certificate of survey referenced in the deed. What *Blazer* held was this: "[I]n order to grant or reserve an easement by *merely* depicting it on a plat or certificate of survey referenced in the deed, an individual looking at that plat or certificate of survey must be able to ascertain, with reasonable certainty, the depicted easement's use or necessity and the intended dominant and servient tenements." *Blazer*, ¶ 75 (emphasis added). *Blazer* did not hold that if there is language in a separate and contemporaneous document explaining the use or necessity of the depicted easement and identifying the dominant and servient tenements, that language must nevertheless be ignored and the depiction must stand on its own.

¶25    We recognized in *Blazer* that "a land description is necessary in an instrument conveying title so that the extent of the claim to the property may be determined, and a reference to a plat or certificate of survey *may* be included to express, confirm, or amplify the land description." *Blazer*, ¶ 51 (emphasis added). If a referenced plat or certificate of survey is the *only* document providing the description of a purported easement—as was the case in *Blazer*—then obviously that plat or certificate of survey must stand on its own. But, if a referenced plat or certificate of survey is used to confirm or amplify the description of a purported easement provided in another document—as here—then the

14

documents should be read together. What is critical is that the transaction documents must "adequately describe" the easement by imparting knowledge of the easement's use or its necessity and by identifying with reasonable certainty the dominant and servient tenements. *Blazer*, ¶¶ 51, 54. These requirements have been met here, reading the Declaration of Easements and the Section 8 Certificate of Survey together. We therefore hold that Wolf Creek Canyon successfully reserved an access easement over what is now Hall's, Stewart's, and the Jasickos' properties (the servient tenements) appurtenant to and for the benefit of what is now the Davises' property (the dominant tenement)—*provided that the existence of the intervening State property does not negate the validity of that easement*. It is to this latter question that we now turn.

¶26      ***Issue 2. Whether an express easement may be appurtenant to a dominant tenement that is not contiguous to the servient tenement.***

¶27      Hall, Stewart, and the Jasickos argued in the District Court that the severance of the easement by the intervening State parcel defeats the Davises' claim that the easement benefits their property. In this regard, Hall, Stewart, and the Jasickos moved during the summary judgment hearing to introduce documentary evidence regarding the Davises' lack of legal authority to cross the State property—specifically, a letter from the Montana Department of Natural Resources and Conversation (DNRC) dated November 16, 2007. In this letter, DNRC states that there is "no record of any easement across the State land in the SWSW of section 8" and "the State would not be inclined to issue any easement through this tract." DNRC notes that there is "a two-track trail" through the State's parcel, but "a determination made in 1975 (which is still valid today) is that this existing

15

trail is not suitably located for use as a permanent road." Hall, Stewart, and the Jasickos contend on appeal that the District Court erred in denying their motion to admit this evidence. Based on the ensuing discussion, however, we hold that the District Court was correct in concluding that the Davises' lack of access across the State land does not defeat their claim of an easement over Hall's, Stewart's, and the Jasickos' lots.

¶28 With respect to the creation of easements appurtenant, courts have adopted two different views concerning the geographic relationship of the dominant and servient tenements.

> According to the prevailing view, the dominant and servient estates need not physically abut in order to create an easement appurtenant. . . . A few jurisdictions, however, adhere to the view that an easement cannot be appurtenant unless the dominant and servient estates are contiguous at some point. In this regard, some courts insist that, in order for a right-of-way to be appurtenant, *one terminus must be located on the dominant estate.*

Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 2:6, 2-17 to 2-18 (Thomson Reuters 2012) (emphasis added, footnotes omitted); *see also* Herbert T. Tiffany & Basil Jones, *Tiffany Real Property* vol. 3, § 762, 214-15 (3d ed. 1939); *May Right of Way be Appurtenant Where the Servient Tenement is not Adjacent to the Dominant*, 76 A.L.R. 597 (1932).

¶29 Thus, if Montana is one of the jurisdictions that follows the minority rule, then the 60-foot road easement depicted on the Section 8 Certificate of Survey cannot benefit (be appurtenant to) the Davises' Section 7 property, given that the road easement ends at the State's intervening parcel and, thus, does not have a terminus on the Section 7 property. In this regard, this Court adheres to the rule that in order to establish an *implied* easement,

16

the dominant and servient parcels must be held as a single tract of land or contiguous tracts of land at the time of severance. *Schmid v. McDowell*, 199 Mont. 233, 237-38, 649 P.2d 431, 433 (1982); *Wolf v. Owens*, 2007 MT 302, ¶¶ 16-17, 340 Mont. 74, 172 P.3d 124; *Waters v. Blagg*, 2008 MT 451, ¶ 14, 348 Mont. 48, 202 P.3d 110; *Frame v. Huber*, 2010 MT 71, ¶¶ 16-18, 355 Mont. 515, 231 P.3d 589; *Yellowstone River, LLC v. Meriwether Land Fund I, LLC*, 2011 MT 263, ¶¶ 35-36, 362 Mont. 273, 264 P.3d 1065. Implied easements, however, arise by operation of law, are based on the inferred intent of the parties, are considered with "extreme caution," and therefore are "limited to narrow situations." *Yellowstone River*, ¶¶ 25, 31-34. The present case involves an *express* easement, rather than an implied easement, and because express easements are based on the expressed intent of the parties in the written instrument or instruments, these easements need not be limited in the same way that implied easements are.

¶30 Indeed, in a 1937 case involving an express easement, this Court recognized the rule that "[a]n easement may be appurtenant to land although the servient tenement is not adjacent to the land of the dominant tenement." *N.W. Improvement Co. v. Lowry*, 104 Mont. 289, 302, 66 P.2d 792, 795 (1937) (citing *Jones v. Stevens*, 177 N.E. 91 (Mass. 1931), 19 C.J. 864, *Lindenmuth v. Safe Harbor Water Power Corp.*, 163 A. 159 (Pa. 1932), and 9 R.C.L. 738). There, the plaintiff company (Northwestern Improvement) had platted and established the town of Paradise, Montana, in 1908 and had included in the deeds for the lots a covenant prohibiting the sale of alcoholic beverages. Northwestern Improvement had also included a possibility of reverter in the event the covenant was violated. In 1910, Northwestern Improvement sold lot 13 in block 2. The deed contained

17

the covenant and possibility of reverter. Later, in 1935, the defendant (Lowry) came into ownership of this lot, erected a building thereon, and began selling beer. This prompted Northwestern Improvement to file suit for injunctive relief. Critically, prior to Lowry's purchase, lot 13 was sold for delinquent taxes, a tax deed was issued, and the lot was then sold to Lowry's immediate predecessor in interest. This Court concluded that the tax sale effectively "annihilated" Northwestern Improvement's possibility of reverter. *N.W. Improvement*, 104 Mont. at 301, 66 P.2d at 794. The Court also held, however, that Northwestern Improvement was entitled to an injunction nonetheless because the restrictive covenant in the original 1910 deed for lot 13 had created "a negative easement appurtenant to the remaining lands owned by plaintiff" (the dominant tenement), even though not all of those lands were contiguous with lot 13 (the servient tenement). *N.W. Improvement*, 104 Mont. at 302, 66 P.2d at 795. The Court concluded that this easement was not extinguished by virtue of the tax sale. *N.W. Improvement*, 104 Mont. at 302-05, 66 P.2d at 795-96.

¶31    In the *Jones* case (cited in *N.W. Improvement*), the Massachusetts court observed that with an easement in gross, it is not essential to the validity of the easement that the grantee, at the time of the grant, should have a legal interest in intervening lands so as to be able to reach the servient tenement. *Jones*, 177 N.E. at 93. The court reasoned that the same principle should apply to easements appurtenant. *Jones*, 177 N.E. at 93. After reviewing extant precedents, the court concluded "the better rule" is that a right-of-way may be appurtenant to land even though the servient tenement is not adjacent to the dominant, and even though it does not appear what the dominant landowner's rights over

18

the intervening land may be. *Jones*, 177 N.E. at 94. Of course, the dominant landowner might not be able to put the right-of-way to effective use without also acquiring a right to pass over the intervening land. It is up to the dominant landowner to acquire that right. But the existence of the intervening land does not, in and of itself, defeat the validity of the easement. *See Jones*, 177 N.E. at 93-94. Thus, the court concluded that

> [a] grantor who has included in his grant a right of way over his remaining land to enable the grantee to pass over a part of the distance from a highway to the parcel granted ought not to be permitted to say that the grant of the easement was invalid or not appurtenant merely because the grantee or his successor has not shown whether or not he has acquired a legal right of way over the land intervening between that sold to the grantee and that retained by the grantor.

*Jones*, 177 N.E. at 94.

¶32 The Court in *N.W. Improvement* did not articulate a specific standard for determining whether an express easement may be appurtenant to property that is not adjacent to the servient property. The rule is well stated, however, in *Verzeano v. Carpenter*, 815 P.2d 1275 (Or. App. 1991), which, like *N.W. Improvement*, also involved an express easement: "an easement may be appurtenant to noncontiguous property if both tenements are clearly defined and it was the parties' intent that it be appurtenant." *Verzeano*, 815 P.2d at 1278 (citing Thompson, *Real Property* § 322 (1980)). We agree with this articulation and adopt it as the standard for granting or reserving an express easement over servient property for the benefit of noncontiguous dominant property.

¶33 Turning to the present case, it appears that in 1975, Wolf Creek Canyon applied for an easement across the State's land in the SW¼SW¼ of Section 8; however, the State determined that the existing trail over that land was not suitably located for use as a

19

permanent road, and the application for an easement was thereafter withdrawn. Nevertheless, regardless of Wolf Creek Canyon's failure to obtain an easement over the State land in the mid-1970s, it is clear from the Declaration of Easements that Wolf Creek Canyon intended the "60' ROAD EASEMENT" depicted on the Section 8 Certificate of Survey to be appurtenant to all of Wolf Creek Canyon's "above described" lands, including the Section 7 property now owned by the Davises.

¶34 Accordingly, Hall, Stewart, and the Jasickos do not have the right to obstruct the Davises' use of Denton Gulch Road where the road passes over their Section 8 lots. We caution, however, as did the District Court, that the Davises have not established *in the instant action* any right to cross the State's intervening property. The State is not a party to this suit. Moreover, under Montana law, a party cannot obtain title to government property through adverse possession or use. *Roe v. Newman*, 162 Mont. 135, 142, 509 P.2d 844, 848 (1973) (citing *Bode v. Rollwitz*, 60 Mont. 481, 199 P. 688 (1921), and *United States v. Eldredge*, 33 F. Supp. 337 (D. Mont. 1940)); *see also People v. Shirokow*, 605 P.2d 859, 866 (Cal. 1980) ("[P]roperty held by the state in trust for the people cannot be lost through adverse possession."); Bruce & Ely, *The Law of Easements and Licenses in Land* at § 5:5, 5-22 ("Absent an enabling statute, no prescriptive easements can be acquired against the federal government or a state." (footnotes omitted)). It will be up to the Davises to establish or acquire a legal right to cross the State's parcel consisting of the SW¼SW¼ of Section 8. But their success or failure in that regard does not defeat their present claim to an access easement along the 60' ROAD EASEMENT through Lots 69, 70, 71, and 72.

20

**CONCLUSION**

¶35 Based on the foregoing analysis, we agree with the District Court that the Davises are entitled to judgment as a matter of law.

¶36 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

Justice Brian Morris specially concurs.

¶37 I agree with the Court that Wolf Creek Canyon successfully reserved an easement appurtenant to and for the benefit of the Davises' property. ¶ 25. I write separately to voice my continued disagreement with the Court's analysis and conclusions in *Blazer* to the extent that the Court's decision today relies on that analysis.

/S/ BRIAN MORRIS