DA 12-0286

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 52

EUGENE THAYER, KEITH BORTNEM,
REBECCA BORTNEM, ROBERT DAILY,
LEIGHANNE DAILY, TAMARA DIMKE,
DUANE DOCKTER, LOIS DOCKTER,
and PATRICIA SLETTEN,

Plaintiffs and Appellants,

v.

MARK A. HOLLINGER and JILL HOLLINGER,

Respondents and Appellees.

APPEAL FROM:     District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 09-773
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Ward E. Taleff, Connor J. Murphy, Taleff Law Office, P.C., Great Falls, MT

For Appellees:

Stephen R. Brown; Elena J. Zlatnik; Garlington, Lohn & Robinson, PLLP,
Missoula, MT

Submitted on Briefs:  February 6, 2013
Decided:  March 5, 2013

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Plaintiffs (collectively referred to as the Homeowners) appeal from the District Court's Opinion and Order, filed October 4, 2011.  We affirm.

¶2     The Homeowners contend that the District Court erred by not recognizing that they have unrestricted easements across four roads located on the Hollingers' property.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     This action arises from easement disputes at Big Sky Lake, which is north of Clearwater Junction and east of Salmon Lake, in Missoula County.  In 1965 the lake was called Fish Lake, and the surrounding land was largely undeveloped.  That year Carter Williams and Anton Hollinger formed a corporation called the Big Sky Lake Company (Company) and bought the lake and the surrounding 800 or so acres of land. They changed the name of the lake to Big Sky Lake, built an access road that encircled the lake and divided the lakeshore into a number of lots.  Over the years those lakeshore lots were all sold to the Homeowners and others.  The access road, called the Perimeter Road and now owned by the Homeowners Association, provides the access to each lakeshore lot.  All of the lakeshore lots lie within the Perimeter Road.

¶4     After the lakeshore lots were divided and sold, the larger tracts of land outside the Perimeter Road were divided between the Hollinger and Williams families. The Hollingers' land does not abut the lakeshore and does not abut the lakeshore lots.  The Homeowners all own lakeshore lots and claim a right, based upon language in various documents that arose from the initial development of the lake, to an express easement allowing them the

2

unrestricted use of four roads or trails on the Hollingers' land.[1] While the Hollingers allow permissive use of the four roads or trails for non-motorized access, the Homeowners claim the right to use motor vehicles including motorcycles, ATVs and snowmobiles.

¶5 After the Hollingers installed gates at several points to block motorized access to the disputed roads, the Homeowners sued in District Court.[2] After an evidentiary hearing, the District Court denied the Homeowners' request for a preliminary injunction against the Hollingers' blocking the roads to motorized access. The Homeowners commissioned a survey of the area and the parties filed cross-motions for summary judgment. The District Court granted summary judgment to the Hollingers, holding that none of the documents relied upon by the Homeowners established an easement across the Hollingers' land.

## STANDARD OF REVIEW

¶6 This case arises from the District Court's decision on cross-motions for summary judgment. This Court reviews a decision on summary judgment de novo, by applying the same criteria as the district court under M. R. Civ. P. 56. *Smith v. BNSF Ry.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639. We review a decision "de novo" to determine whether it is correct. *State v. Loney*, 2004 MT 204, ¶ 6, 322 Mont. 305, 95 P.3d 691.

## DISCUSSION

---

[1] The Homeowners claimed a prescriptive right to use the roads on the Hollinger property. The Homeowners abandoned that claim and the Hollingers abandoned their counterclaims for trespass and damages, in a stipulation approved by the District Court.
[2] There are as many as 75 lakeshore lots on the lake. This action was originally filed by 15 of the lot owners, and the appeal is being prosecuted by nine.

3

¶7     An easement for a right of way is a servitude which may be imposed upon a parcel of land, which is the servient tenement, in favor of another parcel of land, which is the dominant tenement. Sections 70-17-101 and -103, MCA; *Davis v. Hall*, 2012 MT 125, ¶¶ 18-19, 365 Mont. 216, 280 P.3d 261. In this case the Homeowners claim a right of way attached to their lakeshore lots as the dominant tenements, to travel over the four roads or trails through the servient tenement of the Hollingers' land. The Homeowners claim that their right of way arises expressly from several identified documents that establish their easement rights across the Hollingers' land. In such a case, the easement must be described with "reasonable certainty" in documents conveying land, or may be depicted or described in expressly referenced documents such as a recorded plat or certificate of survey. *Davis*, ¶¶ 19-20. An express easement must be "clearly depicted," *Pearson v. Virginia City Ranches Assoc.*, 2000 MT 12, ¶¶ 18-21, 298 Mont. 52, 993 P.2d 688.

> [T]he intent to create an easement must be clearly and unmistakably communicated on the referenced plat or certificate of survey using labeling or other express language. This is the minimal requirement to establish the easement. An easement may not be inferred or implied from an unlabeled or inadequately described swath of land or other such depiction appearing on a plat or certificate of survey.

*Blazer v. Wall*, 2008 MT 145, ¶ 43, 343 Mont. 173, 183 P.3d 84.

¶8     On appeal the Homeowners rely upon several documents to support their claimed easements across the Hollingers' land. First they argue that "Restrictive Covenants for Big Sky Lake," recorded in 1968, are a source of the claimed easements. In those Covenants the Company granted the persons owning lakeshore lots a 60-foot wide easement and right of way for ingress and egress "over roads as the same have been constructed by the Company."

4

The easement was "applicable to the perimeter road, which shall be the outer boundary of each tract and subdivision," and to the "middle access roads" connecting the perimeter road to the roads leading to each lakeshore lot. The Covenants also provide:

> Unless reasonably necessary to reach any individual tract, or unless such roads are part of the Perimeter Road system or the middle access road system, there is *no easement or right of way on any roads which existed prior to 1965 . . . .*

Restrictive Covenants, ¶ 10 (emphasis added).

¶9 The District Court properly determined that the Restrictive Covenants granted an easement only for ingress and egress to the lakeshore lots, and only within the Perimeter Road system. The Hollingers' land at issue is all outside of the Perimeter Road. The easements were also expressly limited to roads constructed by the Company after 1965. There is no evidence that the Company constructed the Hollinger roads after 1965. In addition, the Restrictive Covenants do not provide any clear description or depiction, expressly or by reference, of any roads on the Hollingers' land. The Restrictive Covenants are therefore not a source of easements in favor of the Homeowners across the Hollingers' land.

¶10 The Homeowners also rely upon a January 20, 1972, Grant of Easement from the Company to the Homeowners Association and to each person owning a lakeshore lot. The granted easement was for ingress and egress to the lakeshore lots, for a 60-foot strip of land surrounding the lakeshore, and for all roads shown on any and all plats that have been filed or may be filed by the Company. The Homeowners point to no relevant plat depicting the roads on the Hollingers' property for purposes of the 1972 Grant of Easement, and the

5

District Court correctly determined that the Grant failed to provide any clear description or depiction of an easement across the Hollingers' land. The Grant of Easement is therefore not a source of easements in favor of the Homeowners across the Hollingers' land.

¶11    The District Court specifically found that the Homeowners had not provided copies of any "historically-recorded plats" applicable to the case. A 1999 Certificate of Survey (COS 5018) and a 2009 map (Access Road Parcel Separations [for] Big Sky Lake Estates) submitted by the Homeowners depict the lakeshore tracts, the Perimeter Road, and portions of the surrounding land owned by the Hollinger and Williams families. The District Court found that these documents did not show legal descriptions, sizes or boundaries of the lands outside of the Perimeter Road, "much less show or otherwise describe the four roads located on the Hollingers' private property and the scope and nature of the easements claimed." A 2003 Montana Cadastral Mapping Project map depicts the Hollingers' property and four roads, called "trails," on the property. There is no evidence that the Company recorded this as a plat and the District Court found that nothing on it "reveals, identifies or describes the Homeowners' claims of grants of easement rights over the four 'trails,' " or identifies the trails as "servient estates benefitting the dominant estate properties of the private owners of lake-side tracts . . . ." The Homeowners rely upon a 2010 Survey of Road Centerlines that they commissioned for purposes of this litigation. While it identifies numerous roads or trails outside the Perimeter Road, it is nothing more than a demonstrative exhibit illustrating the Homeowners' claims in this litigation. It is not a grant of easement and does not establish the existence, nature or source of the easements claimed by the Homeowners.

¶12 Last, the Homeowners rely upon easements mentioned in one or more of the warranty deeds given by the Company when transferring some of the lakeshore lots. Those deeds provide easements for ingress and egress to the lakeshore lots, and for the "use of all roads which have been constructed since August 1, 1965" along with easements that are shown on any plats filed by the Company. The Hollinger roads are not used for ingress or egress to the lakeshore lots and there is no evidence that the Hollinger roads were constructed after August 1, 1965.

¶13 The District Court carefully and thoroughly considered each of the easement contentions offered by the Homeowners. After doing so the District Court found that none of the documents support a claim that the Homeowners or their predecessors "were ever granted or reserved such expansive easement rights for access, ingress and egress over Hollingers' private roads." The District Court concluded and ordered that as a matter of law the Homeowners do not have any express easement rights over the four roads located on the Hollingers' property.

¶14 The District Court properly applied the facts and the law to conclude that the Homeowners had not established any right to easements over the Hollingers' land. The District Court is affirmed.

/S/ MIKE McGRATH

We concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BRIAN MORRIS

7